UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY M. RANDOLPH,
    Plaintiff,

v.                                                      Case No. 3:24-CV-1645 (OAW)

JAMIE LOEFELM, et al.,
    Defendants.

## INITIAL REVIEW ORDER

Self-represented plaintiff Anthony Randolph, a sentenced[1] inmate at New Haven Correctional Center, brings this action against Jamie Loefelm, a mental health care provider at the MacDougall-Walker Correctional Institution ("MacDougall-Walker"), and Dr. Susannah Tung, a psychiatrist at the Bridgeport Correctional Center ("Bridgeport CC"). Compl. 1, ECF No. 1. Plaintiff alleges Eighth Amendment deliberate indifference violations and state law claims of defamation, malpractice, and negligence. *Id*. at 2. Reading his complaint liberally, the court also evaluates whether Plaintiff has a viable Fourteenth Amendment claim.

The Prison Litigation Reform Act requires federal courts to review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the

---

[1] The court may take judicial notice of matters of public record. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Department of Correction website shows that Mr. Randolph was sentenced to six years and one month in prison on January 19, 2023. CT State Dep't of Corr., Inmate Information, available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=304309 (last visited July 30, 2025).

complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on this initial review, the court orders as follows:

I. **BACKGROUND**

Plaintiff alleges that on October 20, 2023, he was permitted to review his medical records, including "mental health notes written by" Defendant Tung. Compl. at 3. He discovered that Defendant Tung included notes "falsely accusing . . . Plaintiff of raping and sexually assaulting several female correctional officers." Id. Plaintiff avers that, although Defendant Tung was the author, the allegations came from claims that Defendant Loefelm "planted back in 2019." Id. at 5. Plaintiff submits that he has never "been charged or accused of sexual [assault]." Id. He alleges that Defendant Tung's notes left him "traumatized, emotionally distraught[,] and confused," and he then filed a grievance. Id. at 3–4.

Plaintiff alleges he has experienced bias from healthcare providers while housed at Bridgeport CC. Id. at 3, 6. A nursing supervisor who is not named as a defendant allegedly helped "spread the rumor," and she was also in charge of the grievance process. Id. at 4. The "false and defaming statements" were spread to "other nurses and correctional officers," some of whom "became hostile, disrespectful[,] and unprofessional" towards Plaintiff "on several occasions." Id. Plaintiff alleges that members of the medical

staff both "disrespect[ed]" and felt "threatened by" him because of these statements. *Id*. The discrimination he has experienced has "affected [his] quality of life." *Id*. at 5. He also avers that he has been "verbally abused, physically assaulted[,] and harassed constantly by prison guards, inmates[,] and medical staff" because of Defendants' statements. *Id*. He says that his "reputation has been destroyed" and he is not "trusted to work anywhere" because of these allegations. *Id*. at 7.

On January 3, 2024, Plaintiff claims that he was transferred to Corrigan-Radgowski Correctional Center ("Corrigan") "because a nurse who is always giving" him a "hard time raised his medical level and put more defaming things in his chart." *Id*. at 8. After his transfer, Plaintiff says "every time he went to medical" for his diabetes, the correctional officers would "swarm" him, and "escort him as if he is a threat." *Id*.

On January 8, 2024, while housed at Corrigan, Plaintiff alleges that a cellmate was placed with him, who informed Plaintiff that he wanted "a bribe from a [correctional officer] to assault another inmate for them." *Id*.

Three days later, on January 11, 2024, Plaintiff alleges that his cellmate "viciously assaulted him" while he showered, which put him in the emergency room. *Id*. at 9. Despite being assaulted, he was placed in restrictive housing for fighting. *Id*. Plaintiff claims that Lieutenant Morline of Corrigan told him, "this is what you get for raping our [correctional officers]." *Id*. Plaintiff claims that his cellmate attacked him at the behest of the correctional officers, resulting in Plaintiff suffering vision loss, orbital pain, headaches, and migraines. *Id*.

In sum, Plaintiff alleges that the defendants' dissemination of false information led to him being physically assaulted by male correctional officers and inmates. *Id*. at 11.

3

Plaintiff also alleges that correctional officers and medical staff have discriminated against him due to this false information, which has damaged his mental health.  *Id*.

## II.   DISCUSSION

Plaintiff contends that Defendants violated the Eighth Amendment and the Fourteenth Amendment to the United States Constitution, and committed defamation, malpractice, and negligence under state law.  *Id.* at 2.

### A.  Official Capacity Claims

Plaintiff may not sue a Department of Correction ("DOC") employee in their official capacity for damages because the Eleventh Amendment bars a federal court from holding state employees liable in their official capacity for money damages.  *See Kelly v. New York State Unified Ct. Sys.*, 2022 WL 1210665, at *1 (2d Cir. 2022).  Plaintiff may seek relief against a state official in their official capacity only to the extent that he alleges an ongoing violation of constitutional rights for which a federal court may enter an order of prospective relief.  *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011); (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022).

Here, Plaintiff does not seek injunctive relief for an ongoing constitutional violation.  Rather, he seeks monetary damages for what he alleges is past harm.  Compl. at 11 (seeking $5 million in damages).  And though Plaintiff does not clarify in what capacity he sues the defendants, because he exclusively seeks monetary damages, he may solely proceed in suing Defendants in their individual capacities.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

B. **Deliberate Indifference Under the Eighth Amendment**

Plaintiff argues that his rights were violated under the Eighth Amendment to the United States Constitution. However, he does not articulate how Defendants' actions constitute deliberate indifference under the Eighth Amendment. When reviewing a pro se plaintiff's submissions, the district court must "read the pleadings . . . liberally and interpret them 'to raise the strongest arguments that they suggest.'" *Vargas-Crispin v. Zenk*, 376 F. Supp. 2d 301, 303 (E.D.N.Y. 2005) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)). Nonetheless, pro se plaintiffs still must satisfy relevant rules of procedural and substantive law. *See id.* Reading the complaint broadly, Plaintiff gestures at theories of deliberate indifference to medical care or safety due to falsification of his medical records. However, neither theory is plausible under the current complaint.

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must present evidence of sufficiently harmful acts or omissions by a prison official. *Estelle*, 429 U.S. at 104–06. The prison official must have intended to deny or unreasonably delay access to necessary medical care or to wantonly inflict unnecessary pain. *Id.* Deliberate indifference is a high bar because "not every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Daniels v. Murphy*, No. 3:11-cv-286 (SRU), 2014 WL 3547235, at *8 (D. Conn. July 17, 2014) (citation and brackets omitted).

A successful claim for deliberate indifference must satisfy objective and subjective

elements. The objective component requires Plaintiff to "show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). The court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted). If a plaintiff was completely deprived of medical care, courts "examine whether the inmate's medical condition is sufficiently serious." *Id.* (citation omitted). On the other hand, if the plaintiff received medical treatment but it was inadequate, "the seriousness inquiry is narrower," and focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (citation omitted).

Whether a medical need is sufficiently serious depends on factors that include if "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," if the condition "significantly affects an individual's daily activities," and if the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Under the subjective requirement of the deliberate indifference test, a defendant must have been "actually aware" that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin*, 467 F.3d at 279–80 (citation omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* at 280 (citation omitted). Recklessness requires more than merely negligent conduct. "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "negligence, even if it constitutes medical

malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703. Medical malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (internal citation omitted).

Plaintiff does not explicitly take exception to Defendants' medical treatment of him in their capacity as medical providers, however, he does take issue with the veracity of their notes in his medical records. "District courts have generally declined to find that falsification of medical records alone gives rise to an independent Eighth Amendment claim under Section 1983." *Sherman v. Corcella*, No. 3:19-CV-1889 (CSH), 2020 WL 4043178, at *11 (D. Conn. July 16, 2020) (collecting cases). This court, however, has left the door open on the question of whether such an allegation can serve as the basis for an Eighth Amendment violation. *Griffin v. Barroga*, No. 3:23-CV-1590 (OAW), 2024 WL 2862293, at *8 (D. Conn. June 6, 2024) ("At this point in litigation it is unclear whether this allegation is sufficient to state a stand-alone claim.").

But even assuming such a claim is viable, and assuming further that Plaintiff's allegations meet the deliberate indifference test's objective element, here Plaintiff's allegations do not satisfy the test's subjective counterpart. The allegations do not evince that Defendants knew of and disregarded an "excessive risk to inmate health or safety" in writing the notes because the statement about Plaintiff is unrelated to his medical treatment or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *cf. Griffin*, 2024 WL 2862293, at *8 (allowing claim to proceed because plaintiff alleged the "defendants falsified his medical records to indicate that he refused treatment in February 2023, and

7

that this action was intended to cover up their misconduct and to delay his access to specialists").

Courts have also held that a plaintiff may successfully plead an Eighth Amendment claim "where the falsification occurred in connection with alleged deliberate indifference to that plaintiff's medical needs or where falsification indicates that a defendant acted with deliberate indifference to that plaintiff's medical needs." *Sherman*, 2020 WL 4043178, at *11. Here, Plaintiff makes no allegation that Defendants acted with a deliberate indifference to his medical needs. Therefore, the claim cannot proceed on this basis either.

Nor has Plaintiff alleged facts against the defendants sufficient to support a theory of deliberate indifference to Plaintiff's safety as related to the attack by his cellmate. "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Walker v. Schult*, 717 F.3d 119, 128 (2d Cir. 2013) (cleaned up, quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Constitutional liability attaches when a plaintiff can prove that an official acted with "deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828 (internal quotation marks and citation omitted).

Here, none of Plaintiff's allegations suggest that these Defendants, who served as his medical providers at two previous carceral facilities, were aware of a risk to Plaintiff's safety. *See Nieman v. Cheney*, No. 3:24-CV-01366 (KAD), 2024 WL 4880710, at *3 (D. Conn. Nov. 25, 2024) ("In cases involving the failure to prevent an attack from another inmate, a prisoner may prove deliberate indifference by showing that the official had actual knowledge of a 'longstanding, pervasive, well-documented, or expressly noted'

8

substantial risk of inmate attacks." (emphasis omitted, quoting *Farmer*, 511 U.S. at 842–43)). That said, Plaintiff may have a plausible deliberate indifference to safety claim against the correctional officers who allegedly bribed Plaintiff's cellmate to attack him. As to the named defendants here, however, the Eighth Amendment deliberate indifference claim is dismissed.

### C. Government Defamation Under the Fourteenth Amendment

Plaintiff also alleges a claim for government defamation under the Fourteenth Amendment, which is itself only a viable claim under § 1983 in narrow circumstances. *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (describing the "stigma plus" doctrine, which "in limited circumstances provides a remedy for government defamation under federal constitutional law.").

For Plaintiff to succeed under the "stigma plus" doctrine, the following elements must be present: "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Id.* (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds sub nom. Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6–7 (2003)). "The state-imposed burden or alteration of status must be '*in addition* to the stigmatizing statement.'" *Id.* (emphasis in original); *see also Morris v. Lindau,* 196 F.3d 102, 114 (2d Cir. 1999) (defining "stigma plus" as the "loss of reputation coupled with some other tangible element" (internal quotation marks omitted)).

Burdens that satisfy the "plus" prong include the "deprivation of a plaintiff's property," "the termination of a plaintiff's government employment," or "direct interference

with a plaintiff's business." *Sadallah*, 383 F.3d at 38 (internal citations omitted). However, "deleterious effects flowing directly from a sullied reputation, standing alone," do not satisfy the "plus" element. *Id*. (brackets and internal quotation marks omitted, quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

Here, Plaintiff has sufficiently alleged that Defendants made statements that he claims are false—namely, that Plaintiff raped and sexually assaulted several correctional officers. Compl. at 3. This allegation satisfies the first element. *Sadallah*, 383 F.3d at 38; *see also Patterson v. City of Utica,* 370 F.3d 322, 330 (2d Cir. 2004) (finding that "a plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false").

What is less clear, however, is whether Plaintiff has satisfactorily alleged "a material state-imposed burden" or a "state-imposed alteration" of his status or rights. *Sadallah*, 383 F.3d at 38. This court has previously held that "hurled insults" that a plaintiff is a "rapist" are an insufficient "plus" factor, provided there is no attendant showing that the plaintiff "was subjected to an additional, state-imposed burden as a result of these insulting statements." *Jackson v. Moochie*, No. 3:19-CV-1057 (VAB), 2019 WL 6486119, at *5 (D. Conn. Dec. 3, 2019). This result accords with the standard because the deprived interest must be something for which process was due. *See DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) ("Generally, due process requires that a state afford persons some kind of hearing prior to depriving them of a liberty or property interest." (internal quotation marks and citation omitted)); *see also Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) ("Stated differently, the availability of adequate process defeats a stigma-plus claim.").

Plaintiff alleges in passing that he is not "trusted to work anywhere" because of these allegations. Compl. at 7. This is an insufficient "plus" factor. First, inmates do not have a constitutional right to prison work. *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). Second, Plaintiff himself presents this as a "deleterious effect," flowing directly "from a sullied reputation." *Valmonte*, 18 F.3d at 1001; *see also Balentine v. Tremblay*, 554 F. App'x 58, 60–61 (2d Cir. 2014) ("Moreover, his alleged reputational damage resulting in the loss of private employment, humiliation, and embarrassment are inadequate to satisfy the 'plus' requirement."). The latter reason is also why Plaintiff's claims that he has experienced disrespect, bias, and humiliation are likewise not adequate "plus" factors. *See* Compl. at 5, 9.

Additionally, Plaintiff refers to the rumor's impact on his safety in custody from correctional officers and other inmates. *Id.* Indeed, "[s]ome courts have recognized the deprivation of a liberty interest where a prisoner is given an improper administrative designation for an at-risk category," such as being a member of a gang or a sex offender, and the prisoner "suffers a resulting loss of certain prison benefits and direct death threats from other inmates." *Aniades v. New York State Div. of Parole*, No. 21 CIV. 5975 (CM), 2023 WL 4421877, at *11 (S.D.N.Y. July 10, 2023).

Here, however, Plaintiff does not allege that he was "given an improper administrative designation," for which he would be owed due process, nor does he allege a loss of prison benefits. Although he claims that he was placed in restrictive housing after a correctional officer bribed his cellmate to attack him, he alleges that his altered housing assignment was a consequence of "fighting," and not a consequence of an undue state-issued categorization in the prison classification system. Compl. at 9. Furthermore,

11

even if this altered housing assignment could be a sufficient "plus" factor, neither of the named Defendants here—both of whom worked at Plaintiff's previous facilities—had a hand in the altered housing assignment. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (recognizing that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983").

As presently pleaded, Plaintiff has not alleged a sufficient "plus" factor to proceed on a Fourteenth Amendment "stigma plus" claim. Accordingly, it is dismissed.

### D. State Law Claims

Plaintiff raises three claims under state law against the defendants for defamation, malpractice, and negligence. Compl. at 2.

A federal court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), abrogated on other grounds, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Because there is no properly pleaded claim arising under the federal constitution or federal law, the court will not exercise supplemental jurisdiction over these state law claims. *See Miller*, 879 F.2d at 1071.

**ORDERS**

The complaint is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff may file an amended complaint provided he can correct the deficiencies identified in this order. Any amended complaint shall be filed within thirty days from the date of this order.

SO ORDERED at Hartford, Connecticut, this 30th day of July, 2025.

                                                _____/s/_____
                                                Omar A. Williams
                                                United States District Judge